[Civ. No. 6587.   Third Dist.   July 16, 1941.]

GRACE MONROE–IRWIN, Appellant, v. ELON L. BROWN et al., Respondents.

Albert Picard, Francis McCarty and Fontaine Johnson for Appellant.

Horowitz & McCloskey and Harold Larson for Respondents.

THOMPSON, J.—The plaintiff has appealed from a judgment which was rendered against her in a suit to cancel a deed and contract involving the title to an apartment house in Los Angeles, which instruments were alleged to have been procured by fraud.

The complaint alleges that the plaintiff was the owner of the three-story Romanesque Villa Apartments at Number 1309 North Harper Street in Los Angeles, of the value of $100,000, subject to a first trust deed to secure an indebtedness of $37,000; that the building is situated in an exclusive Hollywood district; that several apartments were then leased and the property when fully occupied has a rental value of $15,900 per year. It is asserted the defendant Junior Realty Company, Ltd., formerly Junior Capital Company, Ltd., a real estate firm of Los Angeles, falsely and fraudulently represented to plaintiff that it had a long list of tenants waiting for apartments and if she would convey to the realty company one-half interest in the building and enterprise, give to it exclusive control and management of the business and join in a note secured by a second mortgage on the property to secure a loan of $9,500, with which to pay interest, taxes, operating expenses and costs of repairing and remodeling the building, it would pay to her $500 in cash and it could and would procure the immediate rental of the apartments at prices which would pay all interest on indebtedness, together with taxes and costs of maintenance and claims for improvements, so as to net plaintiff as her share of the profits the sum of $900 per month, and that the company would also procure a "responsible purchaser of the property" at a selling price which would furnish the plaintiff a "substantial profit."

It is further alleged that the plaintiff, relying upon those representations, executed and delivered to the company the contract dated November 21, 1936, which is marked Exhibit "A" and attached to the complaint. By the terms of that instrument the plaintiff agrees to convey to the company one-half of her interest in the property and to join in a promissory note for the loan of $9,500, secured by a second trust deed on the property. It also covenants to grant to the realty company immediate and exclusive possession and control of the property and of the funds borrowed and received there-

from, subject only to the rendering of periodical statements of accounts and the payments of plaintiff's share of the profits. Absolute control of the repairs, renovation, painting, remodeling and renting of the property is conferred upon the company, together with the duty to determine and pay all debts and claims incident thereto.

It is alleged that, pursuant to the agreement, the plaintiff, on the last mentioned date, conveyed to the Junior Capital Company, Ltd., one-half interest in her property, and executed the $9,500 note and second trust deed to secure the same, which sum was borrowed from the defendant Elon L. Brown; that the realty company thereupon took immediate possession of the property and wrongfully ousted the tenants, terminating all income therefrom, and proceeded to so extravagantly and negligently expend or appropriate the funds on hand, and to discourage or prevent the renting of apartments that the income derived therefrom was wholly destroyed, the value of the property was greatly diminished, the plaintiff was prevented from refinancing or selling the property, and her credit was seriously impaired.

It is alleged the realty company conspired with the other defendants, in the manner previously related, to destroy the value of the property and to prevent the plaintiff from operating, refinancing or paying the indebtedness thereon, so that she would be compelled to forfeit her title thereto. It is asserted the company wilfully permitted deterioration and damage of the property in the course of the repairing and management thereof to plaintiff's detriment in the sum of $2,500; that it permitted the destruction of the lawn and shrubbery to her damage in the sum of $1,000; that it covered with paint and ruined the Moorish stenciled decorations in the building to her damage in the sum of $4,000, and that her financial credit and standing were impaired by defendants' conduct, in the additional sum of $90,000.

The defendants answered, denying the material allegations of the complaint. The cause was tried by the court sitting without a jury. The court adopted findings favorable to the defendants in every respect. Judgment was accordingly rendered to the effect that plaintiff take nothing by her cause of action. From that judgment the plaintiff has appealed.

It is contended the court erred in rejecting evidence offered by the plaintiff to establish the alleged fraud of the defend-

ants, and that the findings and judgment are not supported by the evidence.

There is a conflict of evidence regarding many issues, but there is substantial proof that the property was worth, as the court determined, only about the sum of $55,000, and that it was so heavily encumbered, and the demand for apartments therein so limited that it could not be operated at a profit. The very contract which the plaintiff executed recognizes the valuation of the property to be much less than the sum alleged in the complaint, for it provides it shall not be sold by the realty company for ''less than $65,000.'' It satisfactorily appears that the company negotiated the loan for $9,500 according to the terms of the contract, and that it was all expended for necessary repairs, except the sum of $500, which was paid to plaintiff; that at the time the company took possession of the property there were only three apartments rented for the gross sum of $140 per month, and that those leases were necessarily terminated so that the repairing and renovating of the building could be done, and because the rental which the tenants paid was inadequate. It also appears the realty company exercised every reasonable effort to rent and to sell the property without avail; that the defendants did not misrepresent, defraud or prevent the plaintiff from procuring suitable renters or from refinancing the indebtedness on the property; that on the contrary they did all they reasonably could under the circumstances to finance and successfully operate the enterprise, but that without fault on their part it failed, and the makers of the second note and mortgage defaulted in the terms of those instruments. February 9, 1938, notice of default in the payments due under the second deed of trust was regularly served and recorded. The property was subsequently sold, pursuant to the terms of the contract and the provisions of law, to the beneficiary, Elon L. Brown, subject to the first trust deed, he being the only bidder therefor. This suit was then filed on June 30, 1938.

The findings and judgment are adequately supported by the evidence.

■ We are of the opinion the court did not err in sustaining objections to evidence offered by the appellant. The court sustained an objection to a question propounded to a contractor, who had inspected the premises, as follows: ''In your opinion, would you say that the building was one that would

be attractive to renters for occupancy?'' That objection was properly sustained. The question throws no light on the issue as to whether defendants were guilty of fraud in procuring control of the property or in the conveyance of one-half interest therein. It calls for a conclusion of the witness. Appellant's attorney made no effort to enlighten the court regarding the relevancy of that testimony, or to explain the purpose of the proffered evidence.

A real estate agent by the name of Thompson, who had lived across the street from the property in question for many years was asked if he had ever heard the building referred to as the ''house of mystery.'' The objection to that question was properly sustained. The purpose of this evidence was not explained by counsel for the appellant. It was not suggested the appellant sought to prove that the apartment house bore a bad reputation. There is no evidence that the defendants rented the property to individuals of ill-repute. The authorities cited by appellant which uphold the right to prove general reputation of a house of ill-fame are not applicable to the facts of this case. In fact, the appellant herself operated the apartments until November 21, 1936, when she executed the contract for the realty company's management. After that date considerable time was consumed in renovating and repairing the building. All tenants left during that operation. We are pointed to no evidence that it was ever thereafter leased by the defendants to any tenant of ill-repute. Mr. Jensen, another real estate agent, who testified in behalf of the appellant, said that he visited the premises in April, 1937, and that no tenants then occupied the building. There was no opportunity for the defendants to manage the property in the few months they had control of it in a manner which could have given it a bad reputation. The appellant did not contend at the trial that the building had a bad reputation, or that the defendants had done anything to cause it to be known as a ''house of mystery.'' There is no merit in this challenged ruling.

It was neither erroneous nor prejudicial to sustain an objection to the statement of Mr. Lee Lay Porte, another real estate agent, who visited the building in December, 1937, at the request of the appellant, regarding a conversation he had with the janitor about the manner of renting the apartments and the approximate income from that source. Apparently the janitor properly told him he must get that information

from the owners. If the janitor made any statement to Mr. Porte in that regard, it was hearsay and properly excluded. Moreover, the witness went there at the request of one of the owners of the property. He must have known who the manager was, and that he could obtain accurate information regarding the exact amount of income from the property.

■ The court did not err in sustaining an objection to the proposed evidence of James E. Camp, regarding the condition of the property after the foreclosure proceedings were completed. We are of the opinion that evidence was remote and incompetent.

We have carefully examined the record regarding the other alleged errors in excluding evidence, and believe there is no substantial merit in any of them. There appears to have been no prejudice in those rulings. The plaintiff's witnesses were not unduly restricted in their evidence. The cause seems to have been fairly and impartially tried. There is no substantial evidence of fraud on the part of the defendants or any of them. The findings and judgment are adequately supported by the record.

The judgment is affirmed.

Tuttle, J., and Pullen, P. J., concurred.